

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>KHIM LAM and AI XIEM TRIEU,<br><br>Debtors. | Case No. LA 05-18914 TD<br><br>Adv. No. LA 05-02221 TD<br><br>Chapter 7 |
| DAVID L. RAY, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>KHIM LAM and AI XIEM TRIEU,<br><br>Defendants. | FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW<br><br>DATE:    June 26, 2006<br>TIME:    9:00 a.m.<br>PLACE:   Courtroom 1345 |

The Complaint To Revoke Discharge, filed by David L. Ray, Chapter 7 Trustee (the Trustee), came on regularly for trial on June 26, 2006.

Having considered the testimony of the witnesses, the exhibits admitted into

evidence, and the arguments of counsel, I make the following findings of fact and conclusions of law in support of judgment in favor of defendants Khim Lam and Ai Xiem Trieu (the Lams).

## FINDINGS OF FACT

On April 22, 2005 (Petition Date), the Lams filed a voluntary Chapter 7 petition.[1]

On May 23, 2005, the Lams signed and filed their bankruptcy papers, including their Schedules (Summary Of Schedules and Schedules A - J) and Statement Of Financial Affairs. The Lams did not list an ownership interest in 4006 Tyler Avenue, El Monte, California 91731 (Tyler Avenue Property) in their bankruptcy schedules. The Lams did not list a debt to Far East National Bank (Home Equity Lender) in their bankruptcy schedules.

On or about July 5, 2005, the Lams appeared for their Section 341(a) Creditors Meeting and, during the course of the meeting, stated under penalty of perjury that they had listed all their assets and all their creditors in their Schedules.

The last date for a party to object to the Lams' discharge or the dischargeability of any of the Lams' prepetition debt was July 22, 2005, but as of that date, the clerk of the bankruptcy court had not yet entered the Lams' discharge.

As of July 22, 2005, the Trustee had no knowledge of any interest of the Lams in the Tyler Avenue Property or Lams' participation in the 2003 home equity loan.

The attorney for the Trustee received a letter dated August 4, 2005, from counsel for American Premier Bank, notifying him of the existence of the Lams'

---

[1] All chapter and section references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, unless otherwise specifically indicated.

2

interest in the Tyler Avenue Property.[2]

On September 30, 2005, the Trustee filed a Complaint To Revoke Discharge (Discharge Revocation Complaint) because the Lams omitted assets and creditors from their Schedules. By the Discharge Revocation Complaint, the Trustee sought to revoke the Lams' discharge pursuant to § 727(d)(1) and § 727(d)(2).

The Lams are husband and wife and were refugees from Southeast Asia who completed the sixth grade in Vietnam and did not attend high school.

Zhaoqing Huang is a Buddhist monk who does not speak or read much English.

Huang purchased the Tyler Avenue Property in August 1998, using his own money for the down payment. He signed a promissory note for the balance of the purchase price and also signed a deed of trust, both in favor of Republic Consumer Lending Group, Inc., in connection with the purchase.

Huang uses the Tyler Avenue Property as a temple, known as the American South Sea Pu Tuo Mountain Temple, and lives at the Tyler Avenue Property.

Huang has made all monthly mortgage payments on the purchase money, first mortgage loan secured by the Tyler Avenue Property as well as all real estate tax and homeowner's insurance payments relating to the Tyler Avenue Property.

The Lams have known Huang since 1995. The Lams worship at the American South Sea Pu Tuo Mountain Temple.

For reasons presently unknown to him and unexplained by the evidence, Huang executed a Grant Deed to the Tyler Avenue Property (Tyler Avenue Joint Tenancy Deed) granting the Tyler Avenue Property to Khim Lam, Ai Xiem Trieu, and

---

[2] I admitted the letter as Exhibit 4, over the Lams' objection, solely for purposes of the section of the letter on page 2 entitled "Undisclosed Parcel of Real Property - 4007 Tyler Ave."

3

himself, as joint tenants. The Tyler Avenue Joint Tenancy Deed was recorded on September 1, 1998. Neither of the Lams paid any money to Huang at any time in connection with the making of the Tyler Avenue Joint Tenancy Deed. There was no explanation in the testimony of any witness or in the documentary evidence, as to the reason for the Tyler Avenue Joint Tenancy Deed. Huang and the Lams testified that they had no recollection concerning the subject, and the Trustee offered no testimony or documentary evidence to explain the reason for or the circumstances that led to Huang's Tyler Avenue Joint Tenancy Deed.

Neither of the Lams has ever lived at the Tyler Avenue Property. Neither of the Lams has ever made any payment to the first mortgage lender, Republic Consumer Lending Group, Inc., or for real property taxes assessed against the Tyler Avenue Property, or for homeowner's insurance coverage on the Tyler Avenue Property.

In April 2003, the Lams assisted Huang in obtaining a line of credit from Far East National Bank (Home Equity Lender). The Lams opened a checking account at Far East National Bank in connection with the home equity loan to accommodate Huang. The Lams signed a Home Equity Line of Credit Agreement in favor of Far East National Bank on or about April 28, 2003, secured by a second priority deed of trust against the Tyler Avenue Property, in favor of Far East National Bank. The money advanced from the line of credit was deposited in an account in the Lams' name, but Mr. Lam testified that the entire proceeds of the home equity loan were used to repay loans from third parties made and used to assist Huang's mother in China. I find Mr. Lam's testimony concerning such payments to be somewhat vague but credible. The Trustee chose not to challenge Mr. Lam's testimony about the loans from, or payments to third parties, or that Huang's mother was the ultimate beneficiary of the home equity loan proceeds. The Trustee's evidence neither attempted to establish nor proved that the Lams received any benefit from the home equity loan. I

infer from the evidence that the Lams signed the loan papers out of personal, non-monetary concern for Huang's welfare and peace of mind and without any financial motive on the part of the Lams.

Cross examination of the Lams focused on several checks, all in the $300-400 range, drawn by Mr. Lam, payable to the Home Equity Lender. Mr. Lam explained that the checks were written as an accommodation to Huang to ensure timely payment of interest on the home equity loan and that each check was fully reimbursed to the Lams by Huang. Again, the Trustee did not challenge Mr. Lam's testimony about the purpose of the Lam checks or Huang's reimbursement payments to the Lams.

On May 23, 2005, the Lams met with their bankruptcy lawyer, reviewed their bankruptcy papers, and signed the papers under penalty of perjury stating that the information set forth in the bankruptcy papers was "true and correct to the best of [their] knowledge, information, and belief."

The Lams intended to and did disclose in their bankruptcy papers (a) their ownership in their residence located at 4016 Clark Avenue in El Monte, with an estimated market value of $325,000; (b) their bank accounts, including the Lams' checking account at Far East National Bank from which a few interest payments on the home equity loan were advanced on behalf of Huang; (c) the Lams' brokerage accounts; and (d) $90,440 in funds on deposit in the Lams' attorney's trust account.

The Lams did not list the Tyler Avenue Property in their bankruptcy papers because, as they each explained, they never considered themselves to be owners of the Tyler Avenue Property.

The Lams did not list a debt to Far East National Bank, the Home Equity Lender, in their bankruptcy papers because they believed the debt to be Huang's debt rather than their debt. The Lams also believed the money advanced from the line of credit from Far East National Bank was used directly for the sole benefit of Huang and

1  his mother and that payment of the line of credit was secured the Tyler Avenue
2  Property owned solely by Huang.
3      When the Lams stated under oath at their Creditors Meeting that they had
4  listed all of their assets and all of their liabilities in their bankruptcy schedules, and
5  when the Lams testified at trial, they believed their statements were true and
6  accurate.
7      The Trustee asserts that the Lams' conduct in signing their schedules and in
8  their 341(a) Creditors Meeting testimony was fraudulent.
9      The Trustee's claim is based on the evidence of (a) the 1998 Tyler Avenue
10 Joint Tenancy Deed, (b) the 2003 home equity loan, and (c) the Lam's financial
11 transactions, as discussed above, plus the rebuttable presumption that the Tyler
12 Avenue Joint Tenancy Deed vested the Lams with an interest in Huang's Tyler
13 Avenue Property.
14     The Lams' evidence taken as a whole and under all the circumstances of this
15 case is sufficient (a) to rebut the presumption that the Lams had any beneficial interest
16 in the Tyler Avenue Property or home equity loan proceeds and (b) to persuade me
17 that the Trustee has failed to prove by a preponderance of the evidence the existence
18 of any ulterior motive on the part of the Lams or any fraudulent intent on the part of
19 the Lams, within the meaning of §§ 727(d)(1) or (d)(2).
20     To the extent that any conclusion of law herein is deemed to be a finding of
21 fact, it is incorporated herein by this reference.
22
23 CONCLUSIONS OF LAW
24     The court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C.
25 §§ 1334 and 157(b)(1).
26     The Trustee has the burden of proof by a preponderance of the evidence. In re

Lawler, 141 B.R. 425, 429 (9th Cir. BAP 1992).

A claim for denial of a discharge under § 727 is construed liberally in favor of the discharge and strictly against a person objecting to the discharge. See In re Adeeb, 787 F.2d 1339, 1342 (9th Cir. 1986); In re Devers, 759 F.2d 751, 754 (9th Cir. 1985). A discharge may be denied or revoked for a false oath only upon a finding of actual intent to hinder, delay or defraud creditors. See Id.

The Trustee did not learn of the omissions from the Lams' schedules until after their discharge was deemed entered on July 22, 2005. Accordingly, the claims in the action by the Trustee seeking to revoke the discharge were properly raised under §§ 727 (d)(1) and (d)(2). In re Dietz, 914 F.2d 161, 164 (9th Cir. 1990).

The Lams did not make a false oath within the meaning of § 727 (d) in connection with their bankruptcy schedules or at their Creditors Meeting. The omissions of the Tyler Avenue Property and of the 2003 home equity loan debt do not constitute a false oath within the meaning of § 727(d) because there was no proof of any fraudulent intent on the part of the Lams. Nothing in the Trustee's evidence supports an inference of an intent to defraud the Lams' creditors or to mislead the Trustee or the court by either of the Lams. The Lams did not consider themselves to be owners of the Tyler Avenue Property and did not participate in any way in the 1998 first mortgage loan, insurance, or property tax payments. The Lams considered the 2003 home equity loan debt to be Huang's debt, not their debt. There is no basis in the evidence to conclude that the Lams derived any personal financial benefit from Huang's 1998 Tyler Avenue Joint Tenancy Deed vesting them with a legal interest in the Tyler Avenue Property or from the 2003 home equity loan secured by the Tyler Avenue Property. In this regard, I find the Lams' exculpatory evidence, however vague, to be more persuasive than the Trustee's evidence.

The Lams have a bare legal interest in the Tyler Avenue Property but no

beneficial or equitable interest in the Tyler Avenue Property.

Under all the circumstances revealed by the evidence, the omission of the Tyler Avenue Property and the 2003 home equity loan debt from the Lams' bankruptcy schedules and the Lams' subsequent testimony at the Creditors Meeting does not establish proof by a preponderance of the evidence of actual intent to defraud the Lams' creditors or to mislead the Trustee or the court. Rather, the Tyler Avenue Joint Tenancy Deed and the later home equity loan have been adequately explained by the Lams.

To the extent any finding of fact herein is deemed to be a conclusion of law, it is incorporated herein by this reference.

The Lams' attorney is directed to lodge promptly a proposed judgment in favor of the Lams consistent with the foregoing.

DATED: 7/24/06

THOMAS B. DONOVAN
United States Bankruptcy Judge

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
# AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

1. You are hereby notified that a judgment or order entitled:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

was entered on 7/25/06.

2. I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on 7/25/06.

**Debtors/ Defendants**
Khim Lam and Ai Xiem Trieu
4016 Clark Avenue
El Monte, CA 91731

**Counsel for Debtors/ Defendants**
Raymond Aver
Law Offices of Raymond Aver
12424 Wilshire Boulevard, Suite 750
Los Angeles, CA 90025

**Chapter 7 Trustee/ Plaintiff**
David Ray
Saltzburg, Ray & Bergman, LLP
12121 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025

**Counsel for Chapter 7 Trustee/ Plaintiff**
Damon Saltzburg
Saltzburg, Ray & Bergman, LLP
12121 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025

**U.S. Trustee**
Office of the U. S. Trustee
Ernst & Young Plaza
725 S. Figueroa St., 26th Floor
Los Angeles, CA 90017

**REQUEST FOR SPECIAL NOTICE:**

**Attorney for Creditor American Premier Bank**
Jennifer Witherell Crastz
Hemar, Rousso & Heald, LLP
15910 Ventura Boulevard, 12th Floor
Encino, CA 91436

Dated: 7/25/06

_____
Clerk

9